IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| William Robinson, as personal representative of the estate of Franklin Allen Mitchell; and Meredith Mitchell, | C/A No. 3:14-cv-01325-JFA |
| Plaintiffs, | |
| vs. | **ORDER** |
| American General Life Insurance Company, | |
| Defendant. | |

### I.    INTRODUCTION

This matter comes before the court on Defendant's Motion for a judgment on the pleadings in this life insurance policy dispute.  (ECF No. 10).  Sole defendant American General Life Insurance Co. ("Defendant") moves to dismiss both causes of action: (1) breach of contract; and (2) breach of contract brought by third party beneficiary.  William Robinson, as personal representative of the estate of Franklin Allen Mitchell, and Meredith Mitchell ("Plaintiffs") oppose the motion.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this suit in state court on April 3, 2014.  Defendant removed the action to this court on April 11, 2014, on the basis of diversity jurisdiction.  Defendant answered, and then moved for judgment on the pleadings pursuant to FRCP 12(c).  The following facts are taken from the complaint and are accepted as true.

On February 1, 2011 ("Date of Issue"), Franklin Allen Mitchell purchased a life insurance policy from Defendant, payable in the event of his death in the amount of $800,000.00. The policy included the following exclusion:

> In the event of the suicide of the insured, while sane or insane, within two years
> from the Date of Issue, [Defendant's] liability will be limited to the premiums
> paid.

ECF No. 1-1, p. 14.  Mr. Mitchell paid all premiums on time.  Mr. Mitchell listed his wife,

Meredith Mitchell as the sole beneficiary of the policy.

On September 9, 2012, Mr. Mitchell was found dead, having died from a self-inflicted

gunshot wound to the head.  Ms. Mitchell claimed benefits under the policy.  Defendant sent a

check, in the amount of premiums paid under the policy, to Ms. Mitchell.  Ms. Mitchell returned

the check and demanded the full policy amount of $800,000.00.  This suit followed.

Mr. Mitchell had been receiving treatment from the Three Rivers Center for Behavioral

Health ("Three Rivers") for depression, and "did not want to die."  ECF No. 1-1, p. 5.

According to three expert affidavits attached to the complaint, Three Rivers provided care that

fell below the relevant standard of care.  Thus, according to expert opinions, Mr. Mitchell's

death was "caused by the negligence of third-parties and not due to any conscious decision or

intention to take his own life."  *Id.*

### III.  LEGAL STANDARD

Courts "appl[y] the same standard for Rule 12(c) motions as for motions made pursuant

to Rule 12(b)(6)."  *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-

06 (4th Cir. 2002).  When considering a motion to dismiss under Rule 12(b)(6), the court must

accept as true the facts alleged in the complaint and view them in the light most favorable to the

plaintiff.  *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).  The United States Supreme

Court has stated, however, that "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading "will not do" if it merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Accordingly, Plaintiff must put forth claims that cross "the line from conceivable to plausible."  *Id.* at 680 (internal quotation omitted).  The court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citation omitted).

## IV.  ANALYSIS

Pursuant to S.C. Code § 38-63-225(A), "If an individual life insurance policy contains a suicide provision, it may not limit payment of benefits for a period more than two years from the date of issue of the policy and it must provide for at least the return of premiums paid on the policy."  In an unpublished decision construing South Carolina law, the Fourth Circuit has held "where it is already established that the policyholder committed suicide… [the insurer] need only establish that it has complied with the above two restrictions" to avoid liability—except for the return of premiums paid—under the policy.  *McKinnon v. Lincoln Benefit Life Co.*, 162 F. App'x 223, 227 (4th Cir. 2006).

The policy at issue here clearly complied with § 38-63-225 (A): it provided for the return of premiums paid on the policy and limited nonpayment of benefits to a two year term.  Mr.

3

Mitchell committed suicide on September 9, 2012, about nineteen months after the policy Date of Issue—well within the two year window described in the policy. Moreover, Defendant complied with the terms of the policy by attempting to remit the premiums paid under the policy to Ms. Mitchell.

Plaintiffs argue that, because of Mr. Mitchell's mental illness, his death was not an intentional self-killing, and, therefore, not a suicide. In support of this proposition, Plaintiffs cite to a South Carolina criminal statute defining suicide as "the act or instance of taking one's life voluntarily and intentionally." S.C. Code § 16-3-1090(A)(2). However, Plaintiffs' own experts call Mr. Mitchell's death a suicide, and Plaintiffs admit that Mr. Mitchell killed himself. Plaintiffs' argument is a failed attempt to avoid the "suicide" exclusion, and thus avoid the plain "sane or insane" language of the policy. The real legal question is whether insanity may be used to avoid a suicide exclusion in a life insurance policy, not whether Mr. Mitchell killed himself intentionally. Unfortunately for Plaintiffs, Mr. Mitchell agreed that insanity could not be used to avoid the suicide exclusion in his life insurance policy with Defendant.

Next, Plaintiffs argue that Mr. Mitchell's death was "caused by the negligence of third-parties," by alleging that Three Rivers is guilty of medical malpractice. Perhaps creatively, Plaintiffs torture this allegation into another argument that Mr. Mitchell's death was not intentional, and thus not suicide. As discussed already, however, this argument must be rejected. If Three Rivers is guilty of medical malpractice, as Plaintiffs allege, Plaintiffs may choose to file suit against Three Rivers.

Mr. Mitchell's shooting himself in the head is clearly an intentional act in the ordinary sense of the word. Plaintiffs' argument that Mr. Mitchell "did not want to die" and did not voluntarily kill himself due to mental illness must fail due to policy language excluding coverage

4

for suicide "while sane or insane." Construing a similar provision eighty years ago, the South

Carolina Supreme Court held:

> The phrase, "sane or insane," incorporated in such a [life insurance policy] provision gives no trouble. It is put there by the insurance companies in order that the provision may not be defeated should the insured meet his death by suicide or self-destruction while insane. "A stipulation so worded is valid, self-executing, and will be applied in accordance with its plain terms."

*Gibson v. Reliance Life Ins. Co. of Pittsburgh, Pa.*, 172 S.C. 94, 172 S.E. 772, 774-75 (1934).

Construing a similar provision, the United States Supreme Court held in 1876:

> Nothing can be clearer than that the words, 'sane or insane,' were introduced for the purpose of excepting from the operation of the policy any intended self-destruction, whether the insured was of sound mind or in a state of insanity. These words have a precise, definite, well-understood meaning. No one could be misled by them; nor could an expansion of this language more clearly express the intention of the parties.

*Bigelow v. Berkshire Life Ins. Co.*, 93 U.S. 284, 287 (1876). Therefore, because the complaint

and expert affidavits attached to the complaint plainly allege and admit that Mr. Mitchell died

from suicide, the question of Mr. Mitchell's mental health—sanity or insanity—is irrelevant.

## V.    CONCLUSION

The court dismisses Plaintiffs' complaint in its entirety, *with prejudice*.


IT IS SO ORDERED.


July 10, 2014                                      Joseph F. Anderson, Jr.
Columbia, South Carolina                           United States District Judge